UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENNIS LUTHER, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 11-1184** |
| **JOHN W. STONE OIL DISTRIBUTOR, L.L.C., ET AL.** | **SECTION: "C" (4)** |

## ORDER

Before the Court is Curtis's **Appeal and Objections to Magistrate Judge Report and Recommendation (R. Doc. 116),** which on July 2, 2014, was construed by the presiding District Judge as a Motion for Reconsideration, and transferred to the undersigned for determination and resolution. *See* R. Doc. 121.

### I.     Background

This maritime personal injury action was brought by Plaintiff, Dennis Luther, Jr. ("Luther") against Defendant, John W. Stone Oil Distributor, L.L.C., Stone Buccaneer M/V, collectively ("Defendants") on May 18, 2011. *See* R. Doc. 10. Luther brought this action under the Jones Act, 46 U.S.C. § 30104, to recover damages resulting from personal injuries he sustained on October 8, 2010, while working for John W. Stone Oil Distributor, L.L.C. *See id.*

On March 20, 2014, the undersigned conducted a settlement conference in this matter. *See* R. Doc. 107. During this conference, negotiations and settlement discussions between the parties were successful and a settlement was reached. *See* R. Doc. 109. The only remaining issue was the division of the contingency attorneys' fee between Intervenor, Lawrence N. Curtis and Larry Curtis, APLC, ("Curtis") who represented Luther from January 4, 2011, until his discharge, on May 2,

2011.

Also, on March 20, 2014, the undersigned ordered Curtis to submit a memorandum in support of his request for fees and costs no later than ten (10) days from the settlement that was confected. *Id.* On March 31, 2014, Curtis filed **Intervenor's Brief Regarding Attorney's Fees and Expenses (R. Doc. 110)** into the record, seeking $11,894.84 for the professional fees earned, due and owing to him for the legal services he allegedly provided to Luther. In his brief, Curtis contended that on January 4, 2011, Luther entered into a "Retainer Contract" with him to secure the legal services of his law corporation, Larry Curtis, APLC, in connection with the above captioned matter. *See* R. Doc. 110, p. 1. The terms and conditions of the "Retainer Contract" were in writing, and signed by both Curtis and Luther. *Id.* at 1-2.

Curtis contends that he incurred fees and legal expenses in conjunction with performing legal services on Luther's behalf, beginning on January 4, 2011, until he was discharged by Luther on May 2, 2011. Curtis contends that he forwarded his expenses to Luther's current attorney, Ryan Beasley, Sr., on October 6, 2011, at which time totaled $10,233.46. *Id.* at 2. Since that time, Curtis contends that he is now owed $11,894.84, as he is entitled to recover the professional fees earned, due, and owing for the legal services as well as for the expenses he incurred on behalf of Luther. *Id.*

On April 7, 2014, Luther filed his Reply Memorandum in opposition to Curtis' motion, contesting that Curtis is entitled to a fee despite the retainer agreement, because he was terminated as Luther's counsel before the petition was filed and took no steps in the furtherance of the claim, even though he itemized entries for work not performed *See* R. Doc. 111. On April 10, 2014, the presiding District Judge issued an Order of Dismissal, reserving Curtis's claim in intervention to be resolved by the undersigned. *See* R. Doc. 112.

On May 7, 2014, the undersigned issued a Report and Recommendation (R. Doc. 115) recommending that Curtis' **Brief Regarding Attorney's Fees and Expenses (R. Doc. 110)**, seeking an apportionment of the settlement in accordance with the contingency fee originally signed between he and Luther, be denied because Curtis did not play a significant, nor minimal part in the progression and / or settlement of Luther's action. *See* R. Doc. 115, p. 8. The undersigned's Report and Recommendation also recommended that Curtis' request for $11,894.84 in expenses he allegedly incurred in representing Luther be disallowed for his failure to substantiate these charges. *Id.* at 9.

On May 27, 2014, Curtis filed an **Appeal and Objections to Magistrate Judge Report and Recommendation (R. Doc. 116)** before the presiding District Judge, which was noticed for submission and ordered to be heard on the briefs on June 18, 2014. *See* R. Doc. 120. On July 2, 2014, the presiding District Judge treating Curtis's objections as a Motion for Reconsideration, transferred the appeal and objections to the undersigned for determination and resolution. *See* R. Doc. 121.

**II.**   **Standard of Review**

The Federal Rules of Civil Procedure ("Rules") do not formally recognize a motion to reconsider. *Voisin v. Tetra Technologies, Inc.*, No. 08-1302, 2010 WL 3943522 (E.D. La. Oct. 6, 2010); citing *Pryor v. United States Postal Serv.*, 769 F.2d 281, 285 (5th Cir.1985). However, the Fifth Circuit treats motions to reconsider as either motions to alter or amend judgment pursuant to Rule 59(e) or motions for relief from judgment pursuant to Rule 60, depending upon the time at which the motion is filed. *Lavespere v. Niagra Machine & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990).

The federal courts in this circuit, however, treat a motion to reconsider, when filed within

28 days of the underlying ruling, as a motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e), otherwise it is analyzed under Rule 60(b) if it is served after that time. *Castro v. Tanner,* No. 12-2049, 2013 WL 5935181, at *1, (E.D. La. Nov. 5, 2013); *accord Dixon v. 24th Jud. Dist. Ct.*, No. 12-3026, 2013 WL 4517932, at *1 (E.D.La. Aug. 23, 2013); *Freeport-McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res.*, No. 03-1496, 2004 WL 1488665, at *1 (E.D. La. June 30, 2004); *see also*, *Lavespere v. Niagra Mach. & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990). Luther's motion was submitted to the Court within that time period and thus shall be addressed here under Rule 59(e).

A court's reconsideration of a prior order under Rule 59(e) is an extraordinary remedy that should be used only sparingly and not to re-litigate old matters or to raise new arguments that could have been urged earlier, that simply have been resolved to the movant's dissatisfaction, or to present evidence that should have been brought with the earlier motion. *See Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990); *Karim v. Finch Shipping Co.*, 111 F.Supp.2d 783, 784 (E.D.La.2000); *Clancy v. Employers Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D.La.2000). *See also*, *Clay v. Daichi Shipping*, 2000 WL 6269 (E.D.La. Jan. 5, 2000); *Campbell v. St. Tammany Parish School Bd.*, 1999 WL 777720 (E.D. Sept. 29, 1999.) Instead, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989); *CEF Funding, LLC v. Sher Garnder Cahill Richter Klein & Hilbert, LLC*, No. 09-6623, 2011 WL 1792691, at *1 (E.D.La. May 9, 2011).

The Court therefore, will only consider the motion when the moving party establishes at least one of the following factors: (1) the motion is necessary to correct manifest errors of law or fact

upon which the judgment is based; (2) the movant presents new evidence; (3) the motion is necessary in order to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law. *Castro,* 2013 WL 5935181 at *1; *Gregg v. Weeks Marine, Inc.*, No. 99-1586, 2000 WL 802865, at *2 (E.D.La. May 26, 2000). *See also In re Katrina Canal Breaches*, 2007 WL 496856 (E.D.La. Feb. 12, 2007); *see also, e.g., Motiva Enterprises, LLC v. Wegmann*, 2001 WL 246414 (E.D.La. Mar. 12, 2001); *Clay v. Daichi Shipping*, 2000 WL 6269 (E.D.La. Jan. 5, 2000); *Fields v. Pool Offshore, Inc.*, 1998 WL 43217 (E.D.La. Feb. 3, 1998).

### III.   Analysis

Curtis objects to the undersigned's Report and Recommendation on three grounds: (1) first, that the undersigned erred when she failed to determine the highest ethical contingency fee to which Luther contractually agreed; (2) second, that the undersigned erred when she found that he was terminated as Luther's attorney with cause; and (3) third, that the undersigned erred in finding that Curtis was not entitled to recover expenses and costs. *See e.g.,* R. Doc. 116-1, p. 3-7, 19-20.[1]

In opposition, Luther argues that the undersigned properly determined that Curtis was discharged as counsel for Luther with cause, and that the undersigned did not err in failing to apportion a portion of the fee to Curtis, because Curtis did not advance Luther's case. *See* R. Doc. 118, pp. 2-5. In reviewing the initial Report and Recommendation, the undersigned finds that reconsideration of its determination that Curtis was terminated with cause, as well as its application

---

[1] Although Curtis argues that his appeal was timely filed, Luther argues that the appeal is untimely. For purposes of completeness, the Court acknowledges the argument and the opposition thereof, but for purposes of this Motion for Reconsideration, chooses not to address the timeliness of the appeal, and moves with an analysis of the merits of Curtis's objections.

of the *Saucier*[2] factors is not warranted, as suggested by Curtis.

### A.     Reconsideration of the Determination Curtis was Terminated with Cause

Here, the record reveals that although Luther retained Curtis on January 4, 2011 to represent him in an action related to personal injuries he allegedly suffered on or around October 8, 2010, Luther's complaint in this action was not filed on May 2, 2011, when Luther, concerned with the progress of his case, and with difficulty reaching his attorney, discharged Curtis and retained the Cao Law Firm as his counsel in this matter. *See* R. Doc. 115, p. 6; *see also* R. Doc. 110-1, p. 1, R.

---

[2] *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La.1979), discussed the awarding of attorney's fees to a discharged attorney who had been retained pursuant to a contingency contract. In *Saucier*, the Louisiana Supreme Court found the proportionate services are to be determined according to the factors contained in Rule 1.5(a) of the Rules of Professional Conduct. Rule 1.5(a) provides:

(a)     A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
  (1)     The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  (2)     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  (3)     The fee customarily charged in the locality for similar legal services;
  (4)     The amount involved and the results obtained;
  (5)     The time limitations imposed by the client or by the circumstances;
  (6)     The nature and length of the professional relationship with the client;
  (7)     The experience, reputation, and ability of the lawyer or lawyers performing the services; and
  (8)     Whether the fee is fixed or contingent.

*Langley,* 2003 WL 21991643 at*5 (E.D. La. Aug. 19, 2003). As such, a "trial court's apportionment of a contingency fee according to these '*Saucier* factors' is a factual determination and as such may not be disturbed absent manifest error."*Id. citing Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Osborne v. Vulcan Foundry, Inc.*, 699 So.2d 492, 494 (La.App. 4th Cir.1997). Thus, the amount prescribed in the contingency fee contract is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause. *Id.*

In *O'Rourke v. Cairns*, 683 So.2d 697, 700 (La.1996), the Louisiana Supreme Court reaffirmed the factors and policies articulated in *Saucier*; however, the court modified the analysis for cases involving attorneys who have been discharged for cause. The court held that in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. *O'Rourke*, 683 So.2d at 704. The court should then allocate the fee between or among discharged and subsequent counsel based upon the *Saucier* factors. *Id.* Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the *Saucier* allocation.

Doc. 111, p. 1-3.

As stated in the initial Report and Recommendation, Louisiana courts have found that attorney's in similar circumstances as those described above were found to have been terminated with cause. *See e.g., Langley v. Norton,* No. 99-2653, 2003 WL 21991643 at *6 (E.D. La. Aug. 19, 2003)(finding that good cause existed where attorney met with client on only a few occasions to discuss the case and each time the attorney was unfamiliar with the client's case); *O'Rourke v. Cairns*, 683 So.2d 697, 702 (La.1996) (finding cause where attorney was uncommunicative with client, was uncertain strategically and substantively with regard to the client's medical malpractice claim, and exhibited an unprofessional social demeanor); *Buras v. Dynasty*, 731 So.2d 1010 (La.App. 4 Cir.1999) (finding cause where discharged attorney failed to communicate with his client, answered discovery requests for client without communicating directly with client, failed to meet personally with client and failed to return numerous phone calls); *see Guilbeau v. Fireman's Fund Ins. Co*., 293 So.2d 216, 218 (La.App.3 Cir.1974) (noting that an attorney's failure to perform his or her duties, i.e., doing nothing but filing petition during a two-year period, may constitute cause).

Although Curtis re-outlined the billing entries he originally submitted with his memorandum in support of his attorney fees to justify that he was not aware that Luther had a problem with Curtis's representation, these entries, even with documentation do not warrant an application of any of the factors under Rule 59(e), which would warrant reconsideration of the undersigned's initial report and recommendation. Thus, the Court finds that reconsideration of its determination that Curtis was terminated with cause is not warranted.

    **B.**    **Reconsideration of the Application of the *Saucier* Factors**

The Court finds that reconsideration of its application of the *Saucier* and *O'Rourke* factors in its initial Report and Recommendation, is also not warranted. In its initial opinion, the Court found that the parties did not dispute the contingency fee at the time of signing was thirty-three (33%) percent. *See* R. Doc. 115, p. 7.  The Court also found that even though the parties agreed that the rate would raise to forty percent (40%) if the case continued to trial, because the case settled before it ever reached trial, the highest applicable contingency fee was 33%. *Id.*

In continuing with its analysis of the *Saucier* factors, the Court applied the following factors helpful in determining the proper fee apportionment: the time and labor required and the results which were obtained; the novelty and difficulty of the questions involved, the skills requisite to perform the legal service properly; and the nature and length of the professional relationship with the client. *Id.* citing *Langley,* 2003 WL 21991643 at*5 (E.D. La. Aug. 19, 2003).

The Court reviewed Curtis's billing entries, the same of which were submitted in his appeal and / or objections to the initial Report and Recommendation, which reflect that Curtis served as Luther's attorney from January 4, 2011, through May 2, 2011, for approximately three months. The entries revealed that Curtis billed approximately 31.7 hours during this time period. *Id.* at 7; citing R. Doc. 110, p. 5-7. In reviewing these entries, the Court found that of these entries, nearly half of the hours, approximately 14.1 hours, were spent meeting, consulting with, or speaking to Luther. The Court also found that the billing entries seemingly evidenced that only 7 hours over 4 months were expended on medical research of Luther's claims. *Id.* at 7-8.

The Court thereafter found that in reviewing Luther's complaint, his maritime personal injury claims under the Jones Act did not seem particularly complex or difficult, and that the record evidenced  that Curtis did not advance Luther's claims, as the complaint was not filed until after

8

Curtis was terminated by Luther, and during the pendency of the action, Curtis filed no substantive pleading in support of Luther's claims. Rather, the only substantive pleadings Curtis filed in this action were in his own interest, to recover the portion of the attorney fee contract he had initially signed with Luther, which was in place for three months, and terminated before the complaint was filed.

Thus, even though Curtis provided documentation for these charges and entries in his objections and / or appeal of the Report and Recommendation, the Court finds that its initial assessment does not warrant reconsideration, as its application of the *Saucier* factors were not in error. Curtis was terminated as counsel of record for Luther before the federal complaint was ever filed. Furthermore, Curtis did not file a single pleading on Luther's behalf or aid in the resolution or settlement of Luther's claims. Thus, it was clear in the Court's initial Report and Recommendation, and remains clear today, that Curtis did played no role, nor could he have had a significant part in the resolution of Luther's claim.

The submission of billing entries for work not performed borders unethical conduct even where the purpose is to calculate a contingency fee. This attorney's fee request is a failed attempt to recover a contingency fee award for the work of another firm, which is not appropriate. As such, reconsideration of the Court's recommendation that apportionment of the contingency fee contract between Luther and Curtis is not warranted. *See* R. Doc. 115, p. 8-9; citing *City of Alexandria v. Brown*, 740 F.3d 339, 354 (5th Cir. 2014) (the Fifth Circuit affirmed the District Court's finding that even though there was a contingency fee contract between the former lawyer and client, and the lawyer performed some work during the pendency of the litigation before being terminated, because she made no positive contribution to the litigation or settlement effort, the Court found her entire

contingency fee was not recoverable).

## C.     Reconsideration of the Court's Disallowance of Legal Expenses and Costs

In its initial Report and Recommendation, the Court found that upon review of the billing entries, Curtis sought approximately $11,894.84 in expenses incurred during the representation of Luther, including $210.00 to Trivent Systems, Inc., $888.12 for legal and medical research, $6,552.02 in advances / living expenses paid, $1,219.98 in bank interest paid, $6.11 for postage, $29.32 for long distance phone charges, $1,957.33 for medical records requests, $8.46 for in house postage, and $1,023.50 in copy charges. *See* R. Doc. 115, p. 9, citing R. Doc. 110, p. 13-14. However, because Curtis failed to provide the Court with the proper documentation, such as receipts, to substantiate these charges, the Court recommended disallowing these costs. *See id.* at p. 9.

Because the Fifth Circuit has held that reconsideration pursuant to Rule 59(e) is inappropriate when a movant presents "evidence that should have been brought with the earlier motion," the Court finds that reconsideration of its earlier decision is not warranted due to Curtis's lack of filing evidence necessary to substantiate the $11,894 he sought in expenses from Luther. *See Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990);*Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989).

However, Curtis has now provided the Court with documentation supporting the request for costs as well as an email from Luther's new counsel, dated June 25, 2012, where he conceded the existence of costs, and Curtis's entitlement to be reimbursed for them. *See* R. Doc. 116-19, p. 1. Therefore, the Court analyzed the expenses and receipts Curtis submitted in support of its Appeal / Objections to the initial Report and Recommendation. In his appeal, Curtis sought $11,594.70, including $1.60 in Court Filing – Pacer Fees; $210.00 in Expert Fees – Trivent; $885.33 in Legal

10

and Medical Research Expenses; $6,552.02 in Advances / Living Expenses; $29.32 in Long Distance Phone Charges; $1,219.98 in Bank Interest; $1,937.33 in Medical Records Requests; $746.75 in copying fees; and $12.37 in postage fees.

In support of these expenses, Curtis submitted receipts totaling $10,664.55[3], which included $811.93 for research expenses, $6,652.02 for advances / living expenses, $1.60 for Court filing fees, $29.32 in long distance charges, $1,219.98 in accrued interest payments to Mid South Bank,[4] $12.37 for postage fees and $1,937.33 for Medical Records Requests.[5] A close review of the receipts show that Luther received a significant advance on his claim for living expenses. The receipts also show that he had a loan, which at minimum the interest was paid by Curtis, further supports the

---

[3] *See* R. Doc. 116-6, p. 9, 116-14, p. 19, Science Direct Research, $63.00; R. Doc. 116-9, p. 6, OEM Health Information, $73.20; R. Doc. 116-14, p. 9, 15 Pacer Filing $1.60; R. Doc. 116-14, p. 11-13, Delivered File Tracking – MedSum, $211.00; *Id.* at p. 17, LexisNexis, $6.91; *Id.* at p. 21, Storming Media Medical Research, $73.95; *Id.* at p. 25; OEM Health Information, $73.20; *Id.* at p. 27, LexisNexis $555.33; *Id.* at p. 29, LexisNexis, $81.80; *Id.* at p. 31; Westlaw, $30.94; *Id.* at p. 35, Advanced Living Expenses $100.00; *Id.* at p. 37-38, Check to GMAC, $874.84; *Id.* at 40-42, Check to River Oaks Management for Luther's apartment, $710.00; *See* R. Doc. 116-15, p. 1, Belle Chasse Self Storage, $183.00; *Id.* at p. 3, Advance to Entergy for Luther's utility bill, $66.65; *Id.* at p.5-6, SallieMae Advance, $545.83; *Id.* at 7, Advance to Jefferson Parish Department of Water, $125.56; *Id.* at 9, Advance $300.00; Advance to Pheonix Life Insurance Company, $195.48; *Id.* at 11, Advance to pay RA Fitness, $82.50; *Id.* at 14, Advance to pay State Farm, $162.93; *Id.* at 16, Advance $550.00; *Id.* at 17, Advance Living Expenses to DirectTV, $296.62; *Id.* at 20, Advance Cox Communications, $48.94; *Id.* at 21, Advance Living Expenses, $250.00; *Id.* at 22, Advance to RAFitness, $195.00; *Id.* at 25, Advance to Willow Ridge Lodge, $844.82; *Id.* at 30, $66.15; *Id.* at 32, Advance to Entergy, $59.70; *Id.* at 34, Advance $750.00; *Id.* at 35, Advance to pay Sears Credit Card Bill, $100.00; *See* R. Doc. 116-16, p. 1, Advance to Post Master $44.00; *Id.* at 4, payment for accrued interest requested to MidSouth, $1,295.64 (although total amount was $9,462.01 - the entire sum was not requested by Curtis and there was a disbursement form which indicated that over $4,000 of Luther's loan was disbursed to Curtis); *Id.* at 7-24, ATT Bill evidencing long distance charges, $29.32; *See* R. Doc. 116-17, p. 3; Record Express Bill of Curtis re Luther, $1144.10; *Id.* at 4, Record Express Bill. . . . $484.78; *Id.* at 5, Record Express. . . .$176.13; *Id.* at 6, $41.18; *Id.* at 7, $60.75; *Id.* at 8, $20.00; *Id.* at 9, $10.39; *Id.* at 10-17, Copy Report of copies made at Curtis's office, but no price evidenced therefore, $0.00; *See* R. Doc. 116-18, p. 1-7, same copy reports, with no value reported, $0.00; *Id.* at 8-11, postage receipts $12.37.

[4] Although the check receipt indicates that the total amount paid by Curtis on this loan was $9,462.01, the entire sum was not requested by Curtis. Furthermore, the payment receipt for accrued interest revealed Curtis paid $1,295.64, although he only requested $1,219.98. Because he only requested the lesser amount, the Court finds it appropriate to award Curtis with the amount he requested. Also, there was a disbursement form from MidSouth which indicated that over $4,000 of Luther's loan was disbursed to Curtis.

[5] Although the check receipts indicate that Curtis paid $2,294.73 in Medical Records requests throughout his representation of Luther, Curtis only requested $1,937.33. Therefore, the Court finds it appropriate to award him with what he requested.

11

reimbursement of these expenses. Although Curtis requested $746.75 in copy charges, the "receipts" he submitted indicated no monetary amount spent, therefore the Court finds it appropriate to disallow these expenses. As such, as to the expenses Curtis requested, the Court finds that because of the newly submitted evidence, it shall reconsider only this limited portion of its previously issued Report and Recommendation, and award Curtis $10,664.55 in fees.

### IV.     Conclusion

Accordingly,

**IT IS ORDERED** that Curtis's **Appeal and Objections to Magistrate Judge Report and Recommendation (R. Doc. 116)** is **DENIED IN PART** and **GRANTED IN PART.**

**IT IS DENIED IN PART** as to Curtis's request for the Court to reconsider its application of the *Saucier* factors and its determination that Curtis was terminated with cause.

**IT IS GRANTED IN PART** as to Curtis's request for the Court to reconsider its application for legal expenses and costs Curtis incurred during his representation of Luther. The Court finds that Curtis is entitled to $10,664.55. This obligation shall be satisfied by Luther no later than **twenty (20) days** from the issuance of this Order.

New Orleans, Louisiana, this 15th day of July 2014.

*[signature]*
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**